Bradbury v. Cony.

———————————

JAMES W. BRADBURY and others *vs.* GEORGE CONY.

*Jury. Verdict set aside for improper influences used.*

A verdict will be set aside if it be shown that the jury have been approached during the pendency of the cause, and information volunteered upon the matters in issue therein, by a friend or relative of him in whose favor the verdict was rendered, although such improper influence was not exerted at the request, or with the knowledge of the party prevailing before the jury.

MOTION FOR A NEW TRIAL by the demandants on the ground that the verdict against them was obtained by the effect of improper influences, brought to bear upon the minds of the jurors rendering it. The issue between the parties was as to the true location of the line dividing their conterminous estates, and the testimony as to an alleged set-off in the wall between their respective buildings was conflicting. On the day the cause was argued, and before it was committed to the jury, three of the panel were upon the platform of the railroad depot in Augusta, opposite to the *locus in quo*, and accepted the invitation of the tenant's son to go across the street and examine the premises of the parties and the partition wall between their buildings, and, at his suggestion, made measurements as they went along. The foundation of the wall and the set-off were shown them, and statements relative to material facts were made by their guide, George A. Cony. The jurors testified that they were influenced by what they there saw and heard, and that it tended to induce the rendition of their verdict in favor of the defendant. There was no evidence tending to connect the tenant (George Cony) with this improper conduct of his son. The latter, while conducting the jurors from one estate to the other, said he supposed it would not do for him to be seen with them.

The controversy between these parties has been previously before this court. See 59 Maine, 494. Since the present opinion was promulgated a third trial has been had and a final judgment rendered for the demandants.

*A. Libbey* and *J. W. Bradbury, Jr.,* for the demandants.

*Baker & Baker,* and *S. Titcomb,* for the tenant.

APPLETON, C. J. Every party litigant is entitled to a fair and impartial trial, without bias or prejudice on the part of jurymen and without any interference by the opposite party, or his relatives or friends, creating or tending to create a bias, exciting or tending to excite a prejudice in the minds of those before whom the cause is

Bradbury *v.* Cony.

tried, in favor of the party by whom, or by whose relatives or friends, such interference is had. It is immaterial whether such interference is the result of design, or of ignorance. The effect in either case is the same.

The controversy between these parties relates to the boundary line between the block of stores erected by the demandants and the Cony House built by the tenant. While the cause was on trial the son of the defendant, the occupant of the Cony House, requested some of the jury before whom the case was pending to view the premises. They proceeded under his guidance to examine the demandants' block of stores and the Cony House, making admeasurements as they proceeded, at the suggestion of their self-appointed guide. The examination had, and the measurements taken, were without knowledge of the court, or of the demandants or their counsel. This was done stealthily, the tenant's son remarking as they were going from the demandant's premises to the Cony House, "that it would not do for him to be seen with them." The jurymen testified that this examination, and the measurements made, had an influence on their verdict.

The general principles applicable to interference by a party with jurymen while a cause is pending, are equally applicable to similar interference by the friends or relatives of the party in whose aid such interference is had. It was not necessary to show that the verdict was influenced by the improper conduct of the defendant's son. It is enough, that what was done by him was for the purpose and with the intention of influencing their verdict. Whenever a given course of conduct by the party litigant would induce a court to set aside a verdict, the like action on the part of his friends and relatives would be equally efficacious in producing the same result, for their interference would be more likely to influence the minds of the jury than the more obvious and apparent interest of the party. In the trial of a cause, the appearance of evil should be as much avoided as evil itself. It is important that jurymen should be devoid of prejudice. It is hardly less so, that they should be free from the suspicion of prejudice.

In *Perkins v. Knight*, 2 N. H., 474, it was held where one of the parties, after a cause had been opened, made to a juror out of court statements favorable to his side of the cause, and the jury afterwards returned a verdict in his favor, that this was sufficient cause for setting it aside. In *State v. Hascall*, 6 N. H., 353, it appeared that certain papers prejudicial to the respondent were exhibited by the prosecutor in several public places in Portsmouth, where the court was holden, during the term and before the trial, and that some of the jury boarded at those places. "We are not disposed observed Parker, J., to give any countenance to such a procedure in this or in any other case. It.is of much more importance that the community should feel assured of the purity of the trial by jury, without bias according to law, than it is that John Hascall be now sentenced even if he be guilty."

In *Nesmith v. The Clinton Fire Insurance Company*, 8 Abbott Practice Rep., N. Y., 141, it was proved that during the trial of an action in which there was much conflicting evidence, a juror listened to the statements of a third party, attacking the credibility of the defendants' witnesses. The court held that when it appears that the jury have been approached in such a manner as *might* have influenced the verdict, it should be set aside without reference to the source or the motive of the interference.

In *Reynolds v. Champlain Transportation Company*, 9 Howard Pr. Cases, (N. Y.) 7, it appeared that on the morning of the second day of the trial, and after the plaintiff had rested his case, and before the going in of the court three of the jurors were together in a bar room with other persons. The plaintiff in their presence and hearing, said that the defendants were "a cut throat corporation"—had swindled the public—that he had paid them a great deal of money—that they had defrauded him by not carrying the fruit, &c. There was a conflict of testimony as to whether the plaintiff knew they were jurymen or not. In delivering the opinion of the court, Allen, C. J., says, "no impropriety can be charged upon either of the jurors. They maintained a strict silence during the time the plaintiff was speaking, and left as soon

as the idea of such impropriety was suggested to their minds. * * * * It is said the plaintiff said no more than had been proved in court. * * * * * He charged the defendants with the grossest crimes, and in a manner calculated to prejudice the minds of the jurors. * * *. * * * * Besides, if it were strictly true that he did no more than detail the evidence, it was improper to sum up his cause out of court * * * * * to the jury or any of them." The verdict was accordingly set aside.

These views are most fully affirmed in *Cilley v. Bartlett*, 19 N. H., 312. "The case finds," observes Gilchrist, C. J., in delivering the opinion of the court, "that the defendant in the presence and hearing of one or more of the jury, asserted in the most positive terms, that the testimony of one of the most material witnesses for the demandant was utterly and absolutely false. The tenant swears that he did not know any one of the jury was present at the time."

"Whether he knew this fact or not is not a matter that can be readily proved. But there will be no security for the proper administration of justice, if a party while his case is on trial can be permitted to make statements denouncing his opponent's witnesses, during the adjournment, after the jury have separated, whether he is aware of the presence of a juror or not. If he will conduct in this manner he must take the risk of consequences upon himself. The presumption is, that where jurors hear such statements they are more or less affected by them. *State v. Hascall*, 6 N. H., 352. And as it is necessary that such conduct should be discountenanced, the judgment of the court is, that for this, as well as the other causes we have stated, the demandant is entitled to a new trial."

It is urged that the defendant did not know of and is not responsible for the illegal acts of his son. The effect on the jury is the same whether the tampering is by the party or his friends and relatives—whether with his knowledge or without it. In *Coster v. Merest*, 3 Brod. & Bing., 272, where it was proved that hand bills reflecting on the plaintiff's character had been distributed in

court and shown to the jury on the day of trial, the court refused to receive affidavits of the jury in contradiction and granted a new trial against the defendant, though he denied all knowledge of the hand bills. In *McDaniels v. McDaniels*, 40 Vermont, 864, conversations had with jurors about the case on trial by the friends of the prevailing party, intended and calculated to influence the verdict, were *held* to constitute a sufficient cause to warrant the court in granting a new trial, even though not shown to have influenced the verdict in point of fact, and though they were had without the procurement or knowledge of the prevailing party and listened to by the jurors without understanding that they were guilty of misconduct in so doing. "The friends of the plaintiff," remarks Steele, J., "who thus approached the jury were guilty of a flagrant violation of the law, and the jurors who suffered themselves to be so approached, though they may have meant no wrong, were guilty not only of a violation of the law, but also of the oath they had taken, to say nothing to any person about the business and matter in their charge but to their fellow jurors, and to suffer no one to speak to them about the same but in court. Both were liable to severe and summary punishment. The plaintiff as he was unaware of their transactions is not liable to punishment, but it does not follow from this that he can hold a verdict which is the result of a trial corrupted, though without his fault by a shameful disregard of the familiar rules which are necessary to a decent administration of justice."　　　　　*Motion sustained.*

WALTON, DICKERSON, DANFORTH and VIRGIN, JJ., concurred.