JOHN J. BONNET *et al.*

*v.*

HENRY O. GLATTFELDT.

*Filed at Springfield March 23, 1887.*

1. EVIDENCE—*cross-examination—of its scope, and limitations.* In an action to recover the price and value of labor and materials in rebuilding a foundry that had been injured by fire, the defence being, that the work was done in an unskillful manner, a brick mason, called by the plaintiff, was, on cross-examination, asked "if all the defective portions of the west wall were taken down before they commenced to rebuild it," which question the court disallowed, as not being proper cross-examination: *Held,* that the question might properly have been allowed, but as the defendants had the right to call the witness in chief, the error worked no substantial injury.

2. SAME—*excluding a repetition of a witness' testimony as to the same fact.* There is no material error in refusing to allow a witness to answer a particular question intended to elicit a fact which he has already testified about, when it appears that the party has the benefit of the proposed testimony from the witness' answers to other questions.

3. SAME—*refreshing witness' memory—as to the use of original entries, or a copy of them.* The copy of a writing or account, as well as the origi-

nal, may be referred to by a witness, if his memory, refreshed thereby, enables him to testify from his own recollection of the original facts, independently of his confidence in the accuracy of the copy; but he is not allowed, in such case, to read from the copy. The original entries, if shown to be correctly made, may be read in evidence, but not a copy of them.

4. In case the witness does not merely speak of the memorandum as being correctly copied from his book, or say he has no recollection except as appears from the paper, but testifies that it is a correct account, this will imply that he testifies from independent recollection. In such case, the extent of his recollection, and how far he depended on the memorandum, may be tested by cross-examination.

5. PRACTICE—*recalling witness—discretion of the court.* Where it became important to fix, accurately, the date when a witness commenced work on a building, as tending to show when the plaintiff abandoned the work on the same, he was recalled, and asked if he could then state any more accurately than he had done on a preceding day, the time he commenced such work, and if he could, to do so. The court refused to allow the witness to answer: *Held,* that the court improperly refused the question, but, in view of the large discretion vested in the court, it could not be said the ruling was fatal error.

6. ACTION—*treating a contract as rescinded—right of action as upon a quantum meruit.* Where a party employed to rebuild a foundry which has been injured by fire, performs his contract in part, and is prevented by the owners from completing the same, without cause, the contractor may treat the contract as rescinded by the defendant, and sue for and recover for the work, labor and materials furnished by him.

7. And although the contract provides that the price for the work and materials is to be paid for on the acceptance of the work, etc., ·by an architect, whose decision is to be final, if, before completion the owner of the premises takes possession of the buildings, and the work and materials furnished by the contractor, and appropriates the same to his own use, without the consent of the latter, and thereby prevents him from completing his contract, the contractor may treat the entire contract as rescinded, and recover for the work done and materials furnished by him, without procuring the certificate or approval of the architect.

8. BUILDING CONTRACT—*right to follow architect's directions.* A contract for the rebuilding of a foundry which had been partially destroyed by fire, provided that the contractor should take down all defective walls, and rebuild them according to the architect's plans and specifications, etc., and the architect was thereby appointed superintendent of the work and materials, with full power to inspect, accept or reject any work done or materials to be used, whether worked or otherwise, when not in accordance with the plans, specifications and detail drawings, and it was provided that his decision in that matter, and all other matters relating to the building, etc., should be binding and conclusive upon both parties: *Held,* that the contractor was not

bound to take down walls not directed to be taken down by the architect, and was justified in following his instructions in that regard.

9. Same—*contract construed as to ownership of old bricks not used.* A contract for the taking down of defective walls of a building, and rebuilding the same, among other things provided that all the old brick on the premises should become the property of the contractor, which might be used in rebuilding the walls: *Held,* that all the old brick, including those not used in the rebuilding of the walls, became the property of the contractor.

10. New trial—*for misconduct of juror.* Pending the trial of a cause, and in the evening after the adjournment of the court, one of the jurors asked permission of the plaintiff to ride with him in his wagon, on his way home, to which the plaintiff assented, on being informed by his counsel that there would be no harm in it, if they did not talk about the case, and they rode together to near the juror's residence. It appeared from the affidavits of the plaintiff and the juror, that nothing was said about the case, or any allusion made to it, and the latter deposed that he was in nowise influenced by such association with the plaintiff: *Held,* that while the act of the plaintiff was improper and reprehensible, yet it was not of so grave a character as to require the setting aside of the verdict in his favor.

Appeal from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Adams county; the Hon. John H. Williams, Judge, presiding.

This was an action of assumpsit, brought by Henry O. Glattfeldt, against John J. Bonnet and Richard W. Nance, to recover for work and materials done and furnished by the former to the latter, in doing the brick and cut stone work in the repair and part rebuilding of a foundry which had been partially destroyed by fire. The fire occurred in November, 1882, burning out most of the wood work and injuring a portion of the brick walls. There was an agreement in writing between the parties, on the subject, of the date of February 12, 1883, by the terms of which, and the specifications therein referred to, plaintiff agreed to furnish all material and labor necessary in rebuilding and completing the brick and cut stone work of the foundry building, and do the same according to plans, specifications and detail drawings, as furnished by Frank R. Tubbesing, architect, and complete the same on

or before the 10th day of March, 1883; and that he would do the same in a good and workmanlike manner; and that in doing the same, he would take down all the defective parts of the brick walls of the building, and rebuild the same in the same manner they formerly were; and that he would be responsible for the work until the same should be done, completed, and accepted in writing by said architect. · In consideration of which, it was agreed by defendants that they would pay to plaintiff the sum of $1050, upon the written certificates issued by the architect, as follows: Seventy-five per cent of the same during the progress of the work, and the remaining twenty-five per cent in or within thirty days from the completion of the job, if the same should be done and completed according to agreement, and accepted, in writing, by the architect; and further, that all the old brick on the premises would become the property of the brick contractor, which might be used in rebuilding the walls. The architect was appointed superintendent, with full power to inspect, accept or reject any work done or material to be used, whether worked or otherwise, when the same should not be in accordance with the plans, specifications and detail drawings; and that his decision in that matter, and all other matters relating to said building and other work referred to in the agreement, should be binding and conclusive upon both parties alike. Defendants pleaded the general issue, and filed a plea of setoff, claiming damages for breaches, by plaintiff, of the agreement, in that plaintiff did not, by the time agreed, furnish the material and labor agreed to be furnished, but furnished only a part of the same, and neglected and refused to furnish the residue; and that of the work performed by him, a great part of the same was done in so bad and unworkmanlike a manner, that a large amount of brick work laid up by him in the walls of the building in an improper and unworkmanlike manner, necessarily had to be and was taken down and rebuilt at the expense of defendants. There was a verdict and

judgment for plaintiff for $511.95. On appeal, the judgment was affirmed by the Appellate Court for the Third District, and the defendants appeal to this court.

Mr. A. WHEAT, and Mr. WILLIAM W. BERRY, for the appellants:

A witness is not permitted to refresh his memory by extracts made from other writings, (1 Greenleaf on Evidence, sec. 437,) nor by a copy of a writing made by the witness. Starkie on Evidence, 182, 183.

The witness must be able to say, "This was the paper made or verified by me, as a true record of the events." It is not proper that the copy should be appealed to for the purpose of refreshing the memory, while the original can be produced. 1 Wharton on Evidence, secs. 521, 522.

When a party voluntarily enters into a contract that a third person shall pass upon the quality of the work done under such contract, with power to condemn and reject such work as does not conform to the terms of the contract, he can not evade or disregard the contract, unless the action of such third person is clearly proven to be wrongful or fraudulent. *Snell* v. *Brown*, 71 Ill. 133; *Glacius* v. *Black*, 50 N. Y. 145.

*Methodist Church* v. *Brose*, 104 Ill. 206, is a case in which the alleged and clearly proven action of such third party was wrongful, and a recovery was had by the party injured.

When, by the terms of a written agreement, a contractor binds himself to do work in a good and workmanlike manner, and an architect is appointed with power to accept or reject the work, this does not authorize the architect to accept work not done according to the contract. *Glacius* v. *Black*, 50 N.Y. 145; *Bird* v. *Smith*, 64 E. C. L. R. 785.

The clause in the contract, "all the old brick on the premises will become the property of the brick contractor, which may be used in rebuilding the walls," does not pass the title to brick not so used.

It is a general rule, that all unfair management, trick, fraud and artifice, in the course of a trial, and especially attempts to tamper with or influence or labor the jury, will vitiate the verdict. Graham & Waterman on New Trials, 45.

Every one ought to know, that for any, even the least, intermeddling with jurors, a verdict will always be set aside. Graham & Waterman on New Trials, 50; *Blaine* v. *Chambers,* 1 Serg. & Rawle, 169.

The holding of conversations with jurors after they are sworn, is a practice against which the court should set its face resolutely, and put it down at once. *Ritchie* v. *Holbrooke,* 7 Serg. & Rawle, 458; *Cottle* v. *Cottle,* 6 Greenlf. 140.

The appearance of evil should be as much avoided as evil itself. *Bradbury* v. *Coney,* 62 Maine, 223; *Ryan* v. *Harrow,* 27 Iowa, 494; *Stafford* v. *City of Oskaloosa,* 57 id. 748; *Pool* v. *Railroad Co.* 6 Fed. Rep. 844.

Messrs. CARTER & GOVERT, for the appellee:

When one party to a special contract prevents the other from performing, the latter may abandon the contract, and recover for the labor and materials furnished by him. *Wilson* v. *Bauman,* 80 Ill. 493; *Selby* v. *Huchinson,* 4 Gilm. 319; *Webster.* v. *Enfield,* 5 id. 300; *Butts* v. *Huntley,* 1 Scam. 410; *Herrington* v. *Hubbard,* id. 569; *Reed* v. *Phillips,* 4 id. 40; *Bannister* v. *Reed,* 1 Gilm. 100; *Linnydale* v. *Livingston,* 10 Johns. 36; *Dubois* v. *Canal Co.* 4 Wend. 290; *Britton* v. *Turner,* 6 N. H. 481.

A provision that payments shall be made on the certificates of an architect, may be waived. *Methodist Church* v. *Brose,* 104 Ill. 207.

Even if appellee had not done his work in the manner required by the contract, appellants could not, without his consent, and without notice to him, take the job away from him and do the work themselves, and charge him with the cost of it. *Sanford* v. *Emory,* 34 Ill. 458; *Reynolds* v. *Nelson,* 6 Wend. 20; *Selby* v. *Hutchinson,* 4 Gilm. 319.

A witness may use a memorandum to refresh his memory. (*Dunlap* v. *Berry*, 4 Scam. 372.) And a witness may use a copy of the original memorandum; and the using of a copy would go rather to the weight of his testimony than to its competency. *Railroad Co.* v. *Adler*, 56 Ill. 344; 1 Greenleaf on Evidence, secs. 436, 438, and notes.

In Abbott's Trial Evidence, secs. 320, 321, it is laid down that "copies or abstracts made by him (the witness) from his inspection of such (the original) memoranda, may be referred to by him while on the stand, if his memory, refreshed by them, enables him to testify from recollection of the original facts, independent of his confidence in the accuracy of the memoranda." *Wilde* v. *Hexter*, 50 Barb. 448; *Howland* v. *Willetts*, 5 Sandf. 221; *Adams* v. *People*, 3 Hun, 654; *Shear* v. *Van Dyke*, 10 id. 528; *Sturm* v. *Insurance Co.* 38 J. & S. 286; *McCormick* v. *Railroad Co.* 49 N. Y. 316.

In such a case, the witness having knowledge and recollection outside of the memorandum, his memory is merely refreshed as to details, and he testifies from recollection. The copy could not be admitted in evidence, as the original may often be. The accuracy of his recollection, and the extent in which he depends on the memorandum, may be tested by cross-examination, and in that way the weight to be given to his testimony determined.

The fact that the juror Gronert rode in a wagon with the plaintiff, is no ground for a new trial. No improper conduct or conversation was shown. On the contrary, it is shown by affidavits that no allusion was made to the case, and that the juror was in no way influenced. *Nance* v. *State*, 66 Texas, 000.

Mr. Justice Sheldon delivered the opinion of the Court:

Peter H. Genteman, a witness on behalf of the plaintiff, and a brick mason, upon cross-examination, was asked "if all the defective portions of the west wall were taken down before they commenced to rebuild it." The question was

objected to by counsel for plaintiff, as not being proper cross-examination, and the objection was sustained. It is insisted there was error in this. We think a rather strict rule was applied, and that the question might well enough have been permitted, but we do not perceive that there was any harmful error. The exclusion of the question was not absolute, but only as being improper upon cross-examination. This left it free for the defendants, when they entered upon their defence, to call the witness and renew the question to him. No other ill-effect appears than such postponement of the witness' examination.

The plaintiff, who was a witness on his own behalf, proposed to refresh his memory by using a copy or memorandum of entries in his books of account. The defendants objected. The court overruled the objection, saying the witness had a right to make a memorandum from his books, to refresh his memory by. The witness then testified: "I made this account from my books. It is a correct account of the labor and material furnished. The prices were reasonable. For the work I did, and the extra work, I charged $1329.60. This includes everything except the 40,000 old brick." It is claimed there was error in this ruling and admission of evidence. We think the only legal question which arises in this regard, is as to reading from the copy. The original entries, if shown to have been correctly made, might have been read in evidence, but not the copy of them. The latter might be used only to refresh the memory. The copy of a writing, as well as the original, may be referred to by a witness, if his memory, refreshed thereby, enables him to testify from his own recollection of the original facts, independent of his confidence in the accuracy of the copy. But he is not, in such case, to read from the copy. (Abbott's Trial Evidence, 320, 321; *Marcly* v. *Shults,* 29 N. Y. 346; 1 Wharton on Evidence, sec. 522, and note.) It would rather appear, here, that the copy of the entries was used by the witness but to refresh

recollection. That was the avowed purpose of its use. The witness did not merely speak of the memorandum as being correctly copied from his book, or say that he had no recollection except as appeared upon the paper; but he testified that it was a correct account of the labor and material furnished,—implying that he spoke from independent recollection. The extent of his recollection, and how far he depended on the memorandum, might have been tested by cross-examination; but nothing in this way was attempted, thus leaving his testimony standing, in all its force, as given.

Exception was taken to the exclusion of two further questions. One was to a recalled witness, whether, on Monday morning, he could state any more accurately than he did on Saturday before, the time when he commenced work upon the building after the plaintiff had ceased working on it, and if he could, to do so. It was of importance to fix this exact date, as the question of plaintiff's abandonment of the work very much turned upon it, and we think it was an improper exercise of the court's discretion in refusing the question. But still, the suffering a witness to be recalled and reëxamined, rests so much in discretion, we can not say there was here fatal error.

The other question to a witness was: "On what line would it be necessary to take a sprung wall down before commencing to rebuild it in a good and workmanlike manner?" This witness had stated that he had examined the building for the purpose of figuring upon it, and had stated what portions of the walls he thought it was necessary to take down, so that it seems to us that the defendants lost nothing substantial by the exclusion of the answer to this question from the jury,— that they essentially had all the benefit of it from answers which the witness had given.

Objection is taken to the giving of the second, fourth and ninth instructions, at the instance of the plaintiff. The second instruction was, that if "plaintiff entered upon the

performance of the contract on his part, and performed a part of the work and furnished a part of the materials in accordance with the terms of said contract, and was then and there ready to complete the same in accordance with said contract, but that the defendants, by themselves or through their employes, took possession of said foundry building, and the work and materials so furnished by the plaintiff, and took down a portion of plaintiff's said work, and appropriated and used plaintiff's materials, and rebuilt the work so taken down by them, and completed the work on said building without the consent of the plaintiff, then the court instructs the jury that the plaintiff had the right to treat the said contract as rescinded by the defendants, and to sue and recover in this case for the work, labor and materials so furnished by him, at their reasonable market value at the time they were so furnished."

It is objected to this instruction, that it recognizes the right of recovery, entirely independent of the approval of the architect. Under the circumstances supposed in the instruction, no doubt the plaintiff had the right to treat the contract as rescinded, and sue for and recover for the labor and materials furnished. (*Selby* v. *Hutchinson*, 4 Gilm. 319; *Wilson* v. *Bauman*, 80 id. 493.) In such case, that part of the contract requiring an acceptance by the architect, of the work, would not be in force, and defendants could not claim the benefit of it. The defendants, under the hypothesis of the instruction, would have prevented plaintiff from finishing the job, and thus have prevented him from doing that which was necessary to be done before he could procure the acceptance, or a certificate of the architect. The criticism which is made upon the instruction is not well founded.

No point is made in the case as to whether the recovery should be for the market value of the work and materials, or the contract price should govern, and the accuracy of the last clause of the instruction in this respect is in no way involved.

The same objection is made to the fourth and ninth instructions, and we do not consider that they require any further remark.

The sixth instruction for the plaintiff is objected to, because there was no evidence upon which to base it. We think there is evidence in the record on which to base the instruction.

Complaint is made of the refusal of the court to give the third, fourth, eighth, fifteenth and sixteenth instructions asked for by the defendants. The third was as follows:

"The court instructs the jury, that under the agreement signed by the plaintiff, and in evidence in this case, it was the duty of the plaintiff to take down all the defective walls of the building, to which that agreement refers, and to rebuild them in a good and workmanlike manner, and that no instructions of the superintendent could relieve the plaintiff from this duty imposed upon him by that agreement."

The court had already instructed, that, under the agreement, it was the duty of the plaintiff to take down all the defective walls of the building, and rebuild the same in a good and workmanlike manner. There might well have been, here, difference of opinion as to how far the walls of the building were defective, and how much of them should be taken down. We think, under the agreement, the architect was constituted the judge in this respect, whose decision was to be binding and conclusive on both parties; and if he determined to what extent the walls were defective, and directed what portions of them should be taken down, that the plaintiff would have been justified in following the directions of the architect.

The case of *Glacius* v. *Black*, 50 N. Y. 145, cited by appellant, affords some countenance to the instruction. There, the work was, by the contract, subject to the acceptance or rejection of the architect, and all to be in strict accordance with the plans and specifications; and the architect had power to reject any particular work and materials, and in

such case the builders were to remedy the defects. This being all the authority the architect had under the contract, it was held that the acceptance of the work by the architect did not relieve the contractors from their agreement to perform the work according to the plans and specifications. In the present case, Tubbesing was not only the architect, but he was, by the agreement, appointed superintendent, with full power to inspect, accept or reject any work or material when the same was not in accordance with the plans and specifications; and in addition, it was provided that his decision in that matter, and all other matters relating to the building, and other work referred to in the agreement, should be binding and conclusive in regard to the same, upon both parties alike. Under this larger authority which is given to the architect in this case, we do not regard the case cited as an authority to control here.

The fourth refused instruction was substantially the same as the third. The eighth refused instruction was:

"The court instructs the jury, that although the contract in evidence provided that 'all the old brick on the premises will become the property of the brick contractor, which may be used in rebuilding the walls,' yet, under this contract, the plaintiff had no right to any of the old brick except for the purpose of using them in rebuilding the wall, and whatever remained of such old brick was the property of the defendants."

It is contended the construction of this clause of the contract should be as if it read thus: "All the old brick on the premises, which may be used in rebuilding the walls, shall be the property of the brick contractor. If any are left, they shall be the property of the owners of the building." This may have been what the parties intended, but it is not what they expressed in the contract. The plain reading of that seems to be, that all the old brick on the premises should be the property of the brick contractor. We are not at liberty

12—120 ILL.

to adopt a conjectural meaning, but must take the meaning of the parties as it is expressed by the language they have used.

As to the fourteenth and fifteenth refused instructions, we regard the subject matter of them as embraced substantially in instructions which had been given for the defendants, and that on this ground, if no other, they might properly have been refused.

The final reason urged for a reversal of the judgment, is the alleged "misconduct of a juror in *consorting* with the plaintiff during the trial of this cause." What appears in this respect is, that pending the trial, and in the evening after the adjournment of the court, one of the jurymen was seen near the court house, alone with the plaintiff, riding in the direction of the homes of both, which were about a mile away from where they were seen. The explanation shown by the affidavits of the juror and plaintiff is, that they both lived in the city of Quincy, in this State, and the juror having to go home in the same general direction as the plaintiff, asked permission of the latter to ride with him in his wagon, and plaintiff consented, after being informed by one of his counsel that there would be no harm in it if they did not talk about the case, and they rode together to near the juror's residence; that nothing was said between them concerning the suit, nor any allusion made to the same. The juror says he was in nowise influenced by the ride, either for or against the plaintiff. The counsel confirmed this statement, so far as it respected himself.

There was clear impropriety in this association of the party with the juror. Such appearance is calculated to impair public confidence in the proper administration of the law, which it is so desirable to have prevail, and should always be avoided. In *Stafford* v. *City of Oskaloosa,* 57 Iowa, 748, there was reversal of a judgment solely because of mere association, during the time of the trial, of the counsel of the prevailing party

with one of the jurors, where there had been nothing said respecting the case, and the court was satisfied that nothing wrongful was designed or attempted. It was well said in *Bradbury* v. *Coney,* 62 Me. 223, in speaking upon the subject of the interference by a party, with jurymen, while a cause is pending: "In the trial of a cause, the appearance of evil should be as much avoided as evil itself." It was the appearance alone which induced the court's action in the Iowa case. But the conduct appearing there was much more open to objection, and reprehensible, than that in the present case. Whilst what took place here meets with our strong disapprobation, we hardly feel that we should go so far as to visit it with the penalty of a reversal of the judgment.

The judgment will be affirmed.

*Judgment affirmed.*