AMELIA BALAVICH

*vs.*

WALTER P. AND ELIZABETH M. YARNISH

Oxford.　Opinion, June 3, 1953.

*Jacobson & Jacobson,* for plaintiff.

*Berman & Berman,* for defendants.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, NULTY, WILLIAMSON, TIRRELL, JJ.

FELLOWS, J.  The action was for assault and battery brought by Amelia Balavich against Walter P. Yarnish and his wife Elizabeth M. Yarnish. After a verdict for the defendants had been rendered by the jury in the Superior Court in Oxford County, a motion for new trial was filed by the plaintiff on the alleged ground that there was misconduct on the part of certain jurors. The presiding justice held hearing on the motion. The evidence was presented. The motion was denied and exceptions taken by the plaintiff to this denial.

Briefly, the facts appear to be these: The declaration in the case for assault and battery alleged that the defendants on February 10, 1952 threw water on the plaintiff, and also that one of the defendants struck the plaintiff with a kettle. The pleas were the general issue with brief statements that what was done by the defendants, or either of them, was solely in defense of their own persons, using no more force than was necessary. Upon trial at the November term, 1952, the jury found for the defendants.

This assault case was the first trial of the term, and among the traverse jurors summoned, and selected for the first or regular panel, was Charles C. Aleck, Jr. of Mexico, Maine, brother of Elizabeth Yarnish a defendant in the first case tried. Before any case was heard, the members of the regular panel were instructed by the presiding justice to go to their jury room to elect a foreman, which they did, and reported the election of Albert W. Smith of Dixfield, Maine. The counsel for the plaintiff in the assault case, while the regular panel was being selected, stated his inten-

tion to challenge Charles C. Aleck, Jr., and when the jury returned after election of a foreman, Charles C. Aleck, Jr. was excused from service by the presiding justice, and Dorothy K. Moore of Bethel, Maine served on the case in his stead.

During the trial, juryman Charles C. Aleck, Jr. sat in the rear of the court room with the supernumeraries, because the court had told all jurors, not sitting on the case then being tried, to remain in the room during the entire trial that they might hear his instructions given in this first case.

The trial was commenced on Friday, November 7, 1952, and the arguments and charge came on Saturday morning, November 8th. Before adjournment on Friday afternoon, the presiding justice carefully instructed all jurors not to talk with anyone about the case on trial, and not to permit any person to talk to them.

On November 18, 1952, the counsel for the plaintiff filed a motion for new trial alleging misconduct of several jurors and Charles C. Aleck, Jr. the brother of defendant Elizabeth M. Yarnish, in that Charles C. Aleck, Jr. "mingled with the jury during the course of the trial and after the testimony had been presented and before argument of counsel and the charge by the presiding justice." It was also alleged that "Charles C. Aleck, Jr. rode in the same car with the foreman of the jury and at least one other member of the regular jury from South Paris to Rumford, Maine, all of which the said Amelia Balavich alleges to be improper conduct entitling her to have the verdict set aside."

The testimony, at the hearing on the motion, showed that Charles C. Aleck, Jr. did "mingle" with other jurors during the trial because he and other supernumerary jurors were ordered by the court to remain. Charles Aleck lunched at the same eating place with other jurors. The testimony

further showed that Charles C. Aleck, Jr. rode home with Smith the foreman of the trial jury and another juror named Wilma Tibbetts. The testimony showed that jurors Aleck, Smith, and McGregor were all employees of the Oxford Paper Company, and all three had been summoned to appear as jurors at the November term of the Superior Court to be held at South Paris, Maine. It was agreed between these jurors before court convened that one car only was necessary, and one of them would take his car on one day of court, and that the others would use their cars on the succeeding days to go to and from home, and so on. When Mr. Smith took his car, Mr. Smith paid for gas, and when Mr. Aleck used his car, Mr. Aleck bought the gas. When Mr. McGregor took his car, Mr. McGregor paid for the gas. Mr. Aleck testified, as did Mr. Smith, that the case was not mentioned or discussed by him with any other juror, or with anyone. Mr. Aleck further testified that no information came from him to any other juror that Mrs. Yarnish was his sister. Any member of the jury who knew of such relationship, obtained their information from other sources, or from the fact that the presiding justice excused Mr. Aleck before the commencement of the trial.

The presiding justice, after hearing the evidence, decided that there was no misconduct and denied the motion for new trial.

Revised Statutes 1944, Chapter 100, Section 112 is as follows:

> "If either party, in a cause in which a verdict is returned, during the same term of the court, before or after the trial, gives to any of the jurors who try the cause, any treat or gratuity, or purposely introduces among the papers delivered to the jury when they retire with the cause, any papers which have any connection with it, but were not offered in evidence, the court on motion of the adverse party, may set aside the verdict and order a new trial."

Where a treat or gratuity has had, or might have had, an effect unfavorable to the opposing party, the verdict should be set aside, even though it appears to be the correct verdict. *Derosby* v. *Mathieu,* 136 Me. 91, wherein a ride was given a juror by the plaintiff after verdict. See also *Ellis* v. *Emerson,* 128 Me. 379, invitation to dinner by plaintiff's attorney, and *State* v. *Brown,* 129 *Me.* 169, where deputy sheriff, an officer of the State, gave free transportation; *Bean* v. *Fuel Co.,* 125 Me. 260, attorney giving juror ride.

The foregoing statute relates to a gratuity given by a party, or his attorney, before or after trial during the term. It is, however, the well established rule that any misconduct on the part of juror, or friend of a party, may be ground for new trial. *Rioux* v. *Water District,* 132 Me. 307, witness riding with juror, if juror influenced; *York* v. *Wyman,* 115 Me. 353, statements in jury presence; *Bradbury* v. *Cony,* 62 Me. 223, where son of party showed locus to jurors; *Walker* v. *Bradford,* 117 Me. 147, plaintiff entertained by juror; *Driscoll* v. *Gatcomb,* 112 Me. 289, juryman making investigation; *Winslow* v. *Morrill,* 68 Me. 362, juror seeking evidence.

The presiding justice in this case heard the testimony, and participated in the examination of all persons who were alleged to be guilty of any misconduct or against whom there was any alleged suspicion. There was no evidence of any attempt by a party, or by the non-sitting juror related to a party, to influence any trial juror. There was no evidence of conversation or attempted conversation with any trial juror. The discretion exercised by the presiding justice should not be disturbed because there is no evidence, and because there are no circumstances, from which it can be inferred that he abused that discretion. See *Rioux* v. *Water District,* 132 Me. 307.

This is not a case of a gratuity or offer of gratuity. It is common practice in some counties in Maine for two or more

jurors to travel together and either share the expense, or take turns in using their own cars. It is not a gratuity from anyone, and with Maine's distances it is often an economic necessity. It is also true that in many of our counties several jurors working in the same place of employment may be drawn for jury duty. They may be friends, and one may be related to some litigant. It is also well recognized that with the small population of some counties it would be difficult to pick jurors who bear no relationship to some party in litigation. In fact, the presiding justice usually inquires of a jury, before trial commences, regarding possible relationship to the parties or any of them.

After a "heated" trial before a jury, or a trial wherein the facts are closely contested, the defeated party often attributes the loss of his case to what he "guesses" or "suspects" in some improper outside influence, and not to the real cause which is lack of merit. Unfounded rumors, which accompany many law suits, coupled with the suspicions of the defeated party gained from the gossip of bystanders or from the irresponsible "pity" of sympathetic friends, should not be permitted to be successful ground for a new trial. There must be some evidence of improprieties, and not the accidental or innocent meeting and association of jurors with each other, or jurors with a party. See *Gifford* v. *Clark,* 70 Me. 94.

This court has not hesitated to condemn a verdict and grant the opportunity for a new trial where it has been shown that some improper act has been done that might affect the purity of the verdict, or it appears that some outside influence was exerted or attempted on a juryman. Many cases in the Maine Reports, hereinbefore cited, so indicate. In this case, however, the presiding justice heard the evidence on the motion, that alleged misconduct on the part of a juror or jurors, and found as a fact that there was no misconduct, and no fact that tended to prevent the jury

from deciding the case upon the law and the evidence. *Rioux* v. *Water District*, 132 Me. 307.

We have carefully examined the record of the testimony heard by the presiding justice, and we cannot disagree with his decision. He exercised his discretion properly in denying the motion for a new trial. *Walker* v. *Bradford*, 117 Me. 147.

*Exceptions overruled.*