RuffiN, C. J.
 

 It is objected, that McCulloch ought not to have been allowed to speak of anything, on which his memory had been refreshed by looking at 'his books, without producing the book on the trial. But the rule seems to be otherwise. As the book was written by the witness, himself, and was not, in itself, evidence, and the witness was obliged,'after seeing it, to speak from his remembrance of the tacts, it could serve no purpose to compel him to bring his book to Court. At most, the absence of it could only affect the confidence the Jury might yield to his statement, as it might not be as great, as if the refreshing of his. memory accompanied the giving of his testimony. It could not take away his competency, nor render it improper for him to state to .the Jury, that he had refreshed his'memoiy by referring to his original entries, though not then present. ’
 
 Kensington
 
 v
 
 Idglis,
 
 8 East 273. Indeed, it is obvious,
 
 *120
 
 that, as to the essential point of his testimony — that he did not pass a $20 note to either of the prisoners — he was deposing from his unassisted memory; since that is a particular fact, on which no information could be expected from the book.
 

 ’ The transcript of the law of South Carolina was properly received.
 
 Jackson’s case,
 
 2 Dev. 563, is in point aginst the objection respecting the seal of the State. A transcript, once duly certified, is evidence at all times of the existence of the Statute, and its being in force according to its terms, unless a repeal be shown. The difference in the dates of the Governor’s and Secretary’s certificates is, evidently, a mere mistake, and cannot affect the competency of the document; because, it follows, necessarily, from the Governor’s certificate, that, at the time he gave it, Mi*. Hill had given his. The wrong dating of the one or the other is, therefore, not material.
 

 Then, as to Mr. Dewey’s evidence : the rule is not restricted to cashiers and tellers of banks, but it admits merchants, brokers, and olhei-s, who habitually receive and pass the notes of a bank for a long course of time, so as to become thoroughly acquainted with them, and able to judge between a true and counterfeit bill, and have that knowledge tested, among other means, by the fact, that no bill, passed by the witness, has been returned, though there has been ample time for it, if any of them were not genuine. The cases of
 
 Candler, 3
 
 Hawks, 393, and
 
 Harris,
 
 5 Ired. 287, establish that as the general rule; and the present case is so plain, that there could be no mistake, since the signatures to the note, purporting to be those of the President and Cashier, were not written, but printed.
 

 It was lastly contended on the merits, that the prisoner, Cheek, ought cot to have been convicted, because he was' in fact drunk and asleep, at the distance of 250 yards, when'
 
 *121
 
 the other two passed the note, and there was no evidence of his preconcert with them to pass it; and hence, that he was not guilty as principal and could not, in law, be guilty as accessary before the fact. It is true, there are no ac-cessaries in inferior offences. But it does not follow that procurers and aid.ers in such cases are not guilty at all. On the contrary, because they are not accessaries, the law holds them to be principals. Some observations fell from Judge Hendehsost,
 
 arguendo,
 
 in
 
 Good’s case,
 
 1 Hawks, 463, which seem the other way. He may have been led hastily to express himself inaccurately, by not distinguishing between the case of accessaries before the fact and the one then before the Court, which was, whether there could be an accessary after the fact by receiving stolen goods of less value than twelve pence. This is the more probable, because, a few years afterwards, in
 
 Borden’s case,
 
 1 Dev. 518, that eminent Judge laid down the law explicitly to the contrary, when it was directly to the point before the Court; and, in so doing, he was unquestionably right, according to the text writers and adjudged cases. For example, in
 
 Rex
 
 v
 
 Jackson, 1
 
 Dev. 124, one hired some men to beat another, and they did it in his absence, and then he was indicted for the battery, as having been committed by himself, and convicted and heavily punished ; and Hawkins, Book 2, c, 29, s. 2, lays it down, that whatever will make a man an accessary before the fact in felony, will make him a principal in trespass, and other misdemeanors, as in battery, forgery at common law, and others. Whence, he says, it follows, that, being in judgment of law, a principal offender, he may be tried and found guilty before any trial of the person, who actually did the fact. Mr. East 1 ays down the same doctrine as to forgery at common law, because it was but a misdemeanor, 2 East, P. 6, 973. In effect, then, both of the counts in this indictment charge
 
 *122
 
 the prisoner as a principal; for the one charges
 
 directlyt
 
 that all three passed the note; and the other, that one ot them passed it and the other two procured him to pass it. The question, then, is,, whether thepe was evidence to be left to the Jury, that the note was -passed by Malone or George at the investigation of Cheek or by pre-concert with him. His Honor thought there was, and this Court is of the same opinion. The three persons formed one party, and appeared to be acting on secret consultations with each other, and all the little they had seemed to be hi common. There was much falsehood among them, in representing, that the note came from a responsible person, and in acting under false names. Those circumstances and 'others render it probable, that all of them intended beforehand to pass the counterfeit note on joint account to the first person, who would take it, and that, if they could not get it off on Seymore, they would try it on the wagoners encamped near at hand, and- that it was in fact passed in execution of that plan. For why should all three of
 
 them
 
 have been whispering together just before the note was offered to Seymore ? And why did Malone and George leave Seymore’s house after having once retired for the night, unless for the purpose of imposing on the men with the 'wagon ? Now, they had no opportunity of knowing that those men were encamped at the road, which Cheek did not also have; and then their secret communication to him, on their return, and his quick apprehension of what they had done, evinced by his readiness to enter at once in a feigned name on the completion of that part of the business which they had left unfinished, and, after having done so, his departure with George in a different direction under still another name, are circumstances, from which an inference may be deduced, that in reality there was a conspiracy between the three to pass the note to Seymore or David
 
 *123
 
 son, and that each of them played their parts in execution of it and on joint account. Those subsequent acts of Cheek, do not, of themselves, constitute the offence; but in connexion with the falsehoods uttered by them all, and the other previous parts of the transaction, they reflect back on the actions and motives of the three from the beginning/and were fit to be considered by the jury, and, indeed, raise as strong a presumption against this prisoner, as may be expected in cases oí the kind. The Court is, therefore, of opinion, that there is no error in the judgment.
 

 Ter Curiam, Ordered to be certified accordingly.