## HARRISON PECK, Respondent, *v.* FRANKLIN D. LAKE, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, SEPTEMBER, 1870.)

If a witness can testify to facts, absolutely from his recollection, he need not, it seems, necessarily produce in court a memorandum by which his memory, in respect to the facts, has been revived.

But, where he makes his answers from a statement or memorandum, used on the stand it is the privilege of the party against whom he is introduced to inspect the paper and to examine him concerning it; and even, it seems, to submit it to the jury.

And this is so, without reference to the manner in which the paper affects the testimony of the witness.

A referee has power to compel submission of a paper used by the witness, to the inspection of counsel. And where he declined to exercise such power, and refused to strike out the testimony affected by the paper,— *Held*, that it was error, and the judgment entered on his report was reversed.

THIS was an appeal by the defendant from a judgment entered upon the report of a referee in the plaintiff's favor.

The action was upon a *quantum meruit* for services performed in 1867, by the plaintiff as the defendant's clerk and book-keeper, and also upon a contract for like services performed in 1868. The defendant claimed liquidation of the first years' services at the sum of $150, and payment of that sum, and a violation by the plaintiff of the second years'

Peck *v.* Lake.

agreement. The facts are set forth in the opinion of the court.

*George M. Osgoodby*, for the appellant.

*F. C. Peck*, for the respondent.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court—TALCOTT, J. It is quite probable that the referee in this case has arrived at the correct conclusion upon the facts, and his rulings in regard to the admission of evidence were generally correct. The principal, if not the only difficulty in sustaining the report, arises from what occurred in reference to the memorandum used by the plaintiff as a witness in his own behalf, and his refusal to exhibit the same to the defendant's counsel.

In order to a correct understanding of the facts in connection with the use of the memorandum, I will here recite them as they appear from the case.

The plaintiff had sued to recover wages claimed to be due him for his services as the clerk of the defendant, in a store of the defendant at Nunda. It was claimed by the plaintiff that he had so served the defendant for one year and eleven months. That there was no agreement as to the salary for the first year, as to which the plaintiff claimed to recover on a *quantum meruit.* As to the second year, it was conceded there had been a fixed salary agreed upon by the parties.

Sundry payments had been made to the plaintiff of cash and merchandise on account. The defendant claimed that the salary of $150 per year had been agreed upon between the parties as to the first year, and the defendant had, by an entry of his own, credited the plaintiff with $150 for the first years' salary in his ledger, to which the plaintiff had access, he being the principal book-keeper, and one of the questions litigated on the trial was, when that entry was made, and when, for the first time, it had been brought to the knowledge

of the plaintiff, and whether he had acquiesced in it. There was, also, some controversy as to an item of charge against the plaintiff of ten dollars, which appeared in the defendant's handwriting on the cash book, under date of October 3, 1868, and which had not been carried to the ledger. When the plaintiff was upon the stand as witness, he, amongst other things, stated that the defendant had paid him $554.94.

On being cross-examined as to amounts paid him, he produced a memorandum book "and read from it his answers as to amounts paid," and he denied the payment to him of certain sums as to which he was asked by defendant's counsel.

At a subsequent stage of his cross-examination he stated as follows: "I made the account which I have in my book and which I have read from in December, 1868, or in January, 1869. I had it on another book and copied it on this. The items that accrued after January, 1869, I put on as they accued from day to day. I destroyed the other memorandum, which was on bill paper."

And on redirect examination he said: " This memorandum was taken from the ledger. It is a true copy of that ledger. I first handed Share this book, and I read from the ledger to him first, and then we changed books, and I think he read from the ledger and I from this book. " I have received goods and merchandise, amounting to $29.85, of, defendant, and $554.94 in all. In cash, $525.08."

On his further cross-examination being continued, he said: " I will not produce the book from which I refreshed my recollection yesterday about payments. It was not an accurate memorandum of every item of my account upon Mr. Lake's books. There was one item there not transcribed by me; that item was a credit to me of $150 for one year's labor."

Being recalled on his own behalf, he testified concerning entry in the ledger of the $150 credit, and stated that he had opened a new ledger when he first discovered that credit; and on being cross-examined, he said: "I have my memorandum book with me, from which I read credits to defendant

and answered defendant's questions. I will not produce it unless I am obliged to do so."

The defendant then asked the referee to compel the witness to produce the book.

The referee declined on the ground of a want of power, and the defendant excepted to the ruling.

The plaintiff afterward being recalled in his own behalf, was further cross-examined, and stated as follows: "In figuring up the amount I received for the first year, both in cash and merchandise, I refreshed my recollection from my memorandum book. I could not have remembered the amounts without reference to my memorandum book. Neither could I have remembered the dates of the items. I did not make the entries of the items on this book at the dates they occurred. I have the book with me now. I will not produce the book and let you see it. I footed up these items while on the stand as a witness, after the question was asked me as to amount I received the first year."

The defendant then asked the referee to require the witness to produce the book referred to, for the inspection of defendant and his counsel on this trial. The referee again declined on the ground of a want of power, and defendant excepted.

The defendant then asked the referee that all the evidence of the plaintiff be stricken out on account of such refusal by plaintiff, which motion was also denied on the ground of a want of power, and the defendant excepted. The defendant then asked the referee to strike out the evidence of the plaintiff in reference to the amount of cash and merchandise taken from his memorandum book, on account of the refusal of the plaintiff to produce the book for the inspection of defendant and his counsel on the trial, which motion was also denied by the referee on the ground of a want of power, and the defendant excepted.

I have no doubt the defendant's counsel was entitled to inspect this memorandum and to cross-examine from it. Phillips states the rule to be, that where the memory of a

witness has been revived by a *previous* inspection of a memorandum, it is not absolutely necessary to the admission of the testimony that the memorandum shall be produced in court; but if produced, the opposite party has a right to see it and cross-examine from it. (2 Phil. Ev., 4, Am. ed., 917.) This is where the witness is able to testify to the fact absolutely after having his memory revived, and the testimony itself is entirely independent of the memorandum. There are other cases where the memorandum itself is made evidence to a certain extent, as in the familiar case of proving the testimony of a witness on a former trial, where the party who took the minutes has no present recollection even after inspection of the minutes as to what the testimony was, but is able to swear he took it accurately at the time. Here the minutes in connection with the testimony are made the evidence, and, of course, the parties are entitled to inspect and examine from it. In this case the memorandum of the plaintiff was sought to be made in some sort evidence, without permitting the defendant to see it. At one stage of the case, the plaintiff, on direct examination, testified to its having been copied from defendant's ledger. On his last cross-examination the plaintiff said that he could not have remembered the amounts or dates of the items without his memorandum. When it is recollected that his testimony, in connection with which he had used the memorandum, consisted entirely of amounts and dates of items, it is difficult to say that this was not an attempt substantially to use the memorandum as evidence without permitting the opposite party to see it. But I have no doubt that whenever it appears that a witness is making his answers on the stand from a written statement or memorandum, it is the privilege of the party against whom the witness is introduced to inspect the paper, and to examine concerning it, and even to submit it to the jury if he sees fit. Probably it is the right of the counsel on either side to inspect any paper which is exhibited to the witness on the stand for the purpose of refreshing his memory or in any way affecting his testimony, though this is said not to be the case where a

paper is exhibited to a witness for the mere purpose of proving the signature.

In Hardy's case (24 How. State Trials, 824), EYRE, C. J., said: "It is always usual and very reasonable, when a witness speaks from memorandums, that the counsel should have an opportunity of looking at those memorandums when he is cross-examining that witness."

In *Sinclair* v. *Stephenson* (1 Car. & P., 582), the court held: "If a paper be put into the hands of a witness for the purpose of refreshing his memory, the opposite counsel has a right to see it."

Of course, it can make no difference whether the paper first makes its appearance on the direct or cross-examination of the witness.

It may have been prepared in order to meet and frustrate a probable course of cross-examination.

In *Dowling* v. *Finigan* (1 Car. & P., 587), where it appeared that the witness had taken a memorandum of a conversation he was testifying to, and neither counsel called for it, the judge asked the witness for it after the evidence was closed, and when produced, told the defendant's counsel he might have it read to the jury or not, as he thought proper, saying that either party might have called for it.

In *Rel* v. *Ramsden and al.* (2 Car. & P., 603), the counsel for defendants, on cross-examination, put a paper into the hands of a witness for the crown to refresh his memory as to date. The attorney-general (Sir James Scarlett) wished to look at the paper. The counsel for the prisoners submitted that the attorney-general had no right to see it unless he would put it in evidence. To this Lord TENTERDEN, C. J., answered: "You put the paper into the hands of the witness to refresh his memory. It is usual for the opposite counsel to see it, and examine upon it. I think he has a right to see it."

*Nisi prius* reports in this State being rare, it would probably be difficult to find any authority in our reports on this question, for I apprehend it has been the almost invariable practice of the judge where a witness has been using a mem-

orandum on the stand to require the witness at once to sub-
mit it to the inspection of the counsel examining or the other
party, upon the request being made. I think the rule is
founded in good sense. Very improper uses may be made
of memoranda, to suggest, regulate or control the testimony
of a witness, and the right of the counsel to inspect them fur-
nishes some safeguard against their abuse. An artful witness
will sometimes, for the purpose of adding weight to his testi-
mony with the jury, produce a memorandum claimed by him
to have been made at the time of a transaction, when an
inspection of the paper will show it to have been of more
recent origin, or from the handwriting, or other circumstances,
to have been fabricated with a view to the testimony.

The referee declined to require the plaintiff and witness to
submit the memorandum from which he was testifying, to the
inspection of the counsel for the opposition, not because he
thought it useless or improper for any reason, but on the
ground of a want of power, and for the same reason refused
to strike out the testimony given by the plaintiff as such wit-
ness. In this, I think, the referee erred. He, without doubt,
possessed and might have exercised the same power as the
court would have done under the same circumstances. The
mildest form of relief against the conduct of the witness was
to grant the request of the defendant, that so much of the
plaintiff's testimony as depended, according to his own state-
ment, entirely on the memorandum, should be stricken out.
This was the least to which the defendant was entitled under
the circumstances, and I think the referee erred in denying
the motion. The memorandum, with its contents, is not
before us. From the circumstances of the case, and the des-
cription given by the plaintiff of the memorandum, it is
quite probable that its production would in no way have
affected the result, and perhaps quite improbable that any-
thing would have been disclosed by it, to which the plaintiff
could have any serious objection, and it is to be regretted
that the plaintiff should, if this is so, in the indulgence of
mere captiousness, have subjected himself to the trouble and

expense of a re-trial of his case.  He alone, however, is primarily responsible for the error which renders such a course necessary.

The judgment should be reversed and a new trial ordered, costs to abide the event.

Judgment reversed.