### STATE *v.* MAGERS.

[58 Pac. 892.]

1. WITNESS—REFRESHING MEMORY—PRODUCTION OF WRITING.—Section 836, Hill's Ann. Laws, providing that under certain circumstances a witness may refresh his memory by a memorandum made by himself or under his direction, and that the writing must be produced for inspection, applies only where a witness consults a writing while under examination.

2. WITNESS—REFRESHING MEMORY—PRODUCTION OF WRITING.—Where a witness, whether before testifying or while under examination, has referred to a writing to refresh his memory, opposing counsel is not entitled to have it produced for inspection if the witness' recollection is thereby so revived that

he is able to state the facts of his own knowledge, independently of the writing; but if, after examining the writing, the witness cannot recall the events, and is dependent on the memorandum, which he believes states the truth, the writing must be produced and submitted for inspection.

3. STRIKING OUT TESTIMONY—REQUEST FOR INSTRUCTION.—A refusal to strike out a witness' testimony because of his failure to produce a writing with which he had refreshed his recollection is not error, where opposing counsel made no request for the introduction of the writing.

4. PRACTICE—MOTION TO STRIKE OUT.—A denial of a motion to strike out all a witness' testimony is proper where a part of the testimony is competent: *Jennings* v. *Garner*, 30 Or. 344, approved.

5. REMARKS OF COURT.—A true statement by the court in a criminal prosecution that there was no evidence that the county had offered any reward for the apprehension of the one guilty of the homicide is not prejudicial where it is made in response to the district attorney's objection to the statement of accused's attorney, in his argument, that certain detectives, whose testimony had been introduced, were working to obtain a reward from the county.

6. FAILURE OF DEFENDANT TO TESTIFY—DUTY TO INSTRUCT JURY.—It is not incumbent on the court to instruct the jury that no presumption is created against the defendant by his failure to testify; if such a direction was desired it should have been requested.

7. NEW TRIAL—MISCONDUCT OF JUROR—DISCRETION OF COURT.—It is the province of the trial court to weigh and decide the disputed questions arising on a motion for a new trial because of the alleged misconduct of a juror, and its decision will not be reversed unless it is manifestly wrong.

8. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—A new trial should not be granted on the ground of alleged newly discovered evidence, where accused fails to show that he did not know of the evidence prior to and during the trial.

9. MOTIONS ARE DECIDED ON AFFIDAVITS.—On a motion for a new trial the court is not required to direct that certain persons be brought before it and examined touching alleged statements of a juror, with a view of showing that he was disqualified to sit.

From Polk : GEORGE H. BURNETT, Judge.

A former conviction of W. G. Magers was reversed (35 Or. 520), and on a second trial the defendant was again convicted and sentenced to be hanged.    AFFIRMED.

For appellant there was a brief over the names of *William H. Holmes* and *John J. Daly*, with an oral argument by *Mr. Holmes*.

For the state there was a brief over the names of *Samuel L. Hayden*, District Attorney, *John H. Hall*, and *D. R. N. Blackburn*, Attorney-General, with an oral argument by *Mr. Blackburn* and *Mr. Hall*.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

The defendant was tried for and convicted of the crime of murder in the first degree, and brings this appeal from the judgment which followed, relying upon several grounds of error for the reversal thereof, which we will discuss in their order.

1. The first is touching the action of the court in refusing to withdraw from the consideration of the jury the testimony of one D. McLauchlan, a witness for the state, who testified, among other things, in effect, that he was the Chief of Police of the City of Portland ; that he remembered the circumstance of the defendant, William G. Magers, being brought into his office on the twenty-third of September, 1898 ; that he had on his person $58.60,—between $58 and $59 ; that he had a mackintosh, a pair of gloves, and a handkerchief ; that the mackintosh was wet, and seemed to have been in that condition for some time ; that the gloves were wet also, and appeared to have been put in the pocket wet. He detailed a statement made to him by Magers in the presence of detectives John Cordano and H. P. Ford, and a stenographer named Fred Moos, who took it down in shorthand at McLauchlan's instance. On cross-examination he answered interrogatories as follows: ''Q. Have you related the entire conversation which you had, giving the substance of the questions and answers,—all questions and answers? A. Well, I don't know. Might have forgotten some of them. Q. The stenographer was supposed to write down everything you said, as well as all that Mr. Cordano, Ford, and defendant said? A. Well, some of the defendant's answers were pretty low. Don't suppose he got them all. Q. Did you ever see the notes of the stenographer? A. Yes, sir. Q. Could you read them? A. Well, no ; could not read them. After they were extended, I could read them. Q. Is it not a fact

that you have refreshed your memory from those notes?
A. Yes, I did. Q. You are testifying in part from memory
and partly from refreshing your memory from the type-
written notes of the stenographer? ·A. Yes, I presume I
am. Don't know just how much. Q. You went to them
for the purpose of refreshing your memory? A. Yes, sir.
Q. Have you those notes with you? A. No; I wasn't
told to bring them. Q. You have the shorthand notes?
· A. No, sir. I never had them. Q. Where is the ste-
nographer? A. In Alaska now. Q. Without the notes,
or the typewritten copy of the notes, rather, which you
had in your possession, which you read, you would not
undertake to testify to all the facts as clearly as you have?
A. I might not have the story as well connected, but
I think I would remember most of the facts. Q. You
haven't been called upon to tax your mind for the recol-
lection of the facts to that extent that you might have
done or would have done had you not had the notes?
A. I presume the notes helped me some. Q. You haven't
depended upon your memory as to what occurred to that
extent had you not been supplied with notes? A. Well,
I don't know if I would say that. I think the notes
were of some assistance to me in refreshing my memory.
Q. Is it not a fact that you would have paid more atten-
tion to it, and taxed your mind or memory with the
recollection of what occurred, more than you have done
on account of knowing it had been written down? A. I
might have done so ; yes, sir.''

At the close of the examination of the witness, counsel
for defendant moved the court to direct the jury not to
consider his evidence, upon the grounds that it appeared
the witness' recollection was supported in part by the
notes taken by the stenographer; that he had refreshed
his memory by reference thereto before coming on the
stand to testify ; and that he had neither produced the

original notes nor the extended copy thereof in court, so that defendant could cross-examine him touching them. The court denied the motion, and error is assigned because of its ruling in that regard. Section 836, Hill's Ann. Laws, provides that " a witness is allowed to refresh his memory respecting a fact by anything written by himself or under his direction at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing. But in either case the writing must be produced, and may be inspected by the adverse party, who may, if he choose, cross-examine the witness concerning it, and may read it to the jury. So, also, a witness may testify from such a writing, though he retain no recollection of the particular fact ; but such evidence shall be received with caution.'' It is contended that under this statute McLauchlan should have been required to produce either the shorthand notes or the extended copy in court, so that the defendant could have had the benefit of cross-examination touching them ; otherwise, that his testimony should have been taken from the consideration of the jury. It will be observed that while upon the stand he was able to state from his own recollection what occurred, and to detail the statement of the defendant without reference to the stenographer's notes. In such a case the testimony of the witness is the substantive evidence, and not the stenographic notes, which could not properly go to the jury in that capacity. It was not a question of the relevancy or competency of the notes themselves as evidence, but a question, under the statute, whether the defendant, within the meaning of the section referred to, was entitled to have the notes produced in court, so that he could inspect them, and thereby be enabled to cross-examine the witness concerning them.

Under the common-law rule there are three classes of cases in which a witness is allowed to refresh his memory by means of written memoranda : (1) Where the writing serves only to revive or assist the memory, and to bring to mind a recollection of the facts ; (2) where the witness may recall having seen the writing before, and, though he has no independent recollection of the facts mentioned in it, yet remembers that at the time he saw it he knew the statements therein contained to be correct ; and (3) where it brings neither any recollection of the facts mentioned in it, nor any recollection of the writing itself, but which enables him (the witness) to swear to a particular fact from the conviction of his mind on seeing a writing which he knows to be genuine : 2 Phillips, Ev. p. 916. In elucidating the case before us, it is necessary to keep in view the first and second classes only, and we may, therefore, eliminate further reference to the third, except as it may be convenient incidentally. Mr. Phillips says : "In the first class of cases, where the memory of a witness has been revived by the previous inspection of a writing, it is not necessary, as a condition of the admission of his oral testimony, that the writing should be produced in court. The case seems to differ only in degree from many others in which memory is revived by reference in the mind of a witness to any circumstance to which his attention may have been drawn with a peculiar degree of force. The absence, however, of the writing might afford matter of observation. If it is produced, the counsel for the other party has a right to see it, and cross-examine from it. Where writing has not the effect of reviving the witness' memory (as in the two last classes of cases above mentioned), but yet enables him to speak positively to a fact, so that his testimony depends upon his inference from the writing, the writing must be produced, and his testimony is admissible as

proof of the fact." Mr. Greenleaf states the rule, both as to when writings may be used to assist the memory and when they shall or shall not be produced in court, as follows : "(1) Where the writing is used only for the purpose of assisting the memory of the witness. In this case it does not seem necessary that the writing should be produced in court, though its absence may afford matter of observation to the jury ; for the witness at last testifies from his own recollection. (2) Where the witness recollects having seen the writing before, and, though he has now no independent recollection of the facts mentioned in it, yet he remembers that at the time he saw it he knew the contents to be correct. In this case the writing itself must be produced in court, in order that the other party may cross-examine ; not that such writing is thereby made evidence of itself, but that the other party may have the benefit of the witness' refreshing his memory by every part :" Greenleaf, Ev. § 437.

ROWELL, J., in *Davis* v. *Field*, 56 Vt. 426, states the rule, confining it to the two first classes. He says : "There seems to be two classes of cases on this subject : (1) Where the witness, by referring to the memorandum, has his memory quickened and refreshed thereby, so that he is enabled to swear to an actual recollection. (2) Where the witness, after referring to the memorandum, undertakes to swear to the fact, yet not because he remembers it, but because of his confidence in the correctness of the memorandum. In both cases the oath of the witness is the primary, substantive evidence relied upon ; in the former, the oath being grounded on actual recollection, and in the latter on the faith reposed in the verity of the memorandum, in which case, in order to judge of the credibility of the oath and the reliance to be placed upon the testimony of the witness, the memorandum must be original and contemporary, and produced in court. The

testimony objected to comes within the latter class.''
It is only in the latter of the two classes of cases de-
noted in this case that the memorandum is required to
be produced in court.    Under the first class—that is,
where witness is enabled to testify touching the fact inde-
pendently of the memorandum—it is not necessary that
he produce the same in court.    The rule is concisely
stated in the first of the head notes in *Peck* v. *Lake*, 3
Lans. 136, as follows : ''If a witness can testify to facts
absolutely from his recollection, he need not, it seems,
necessarily produce in court a memorandum by which
his memory, in respect to the facts, has been revived.''
In support of this rule, the learned judge who wrote the
opinion quotes from Phillips on Evidence.    And again,
in *Tibbetts* v. *Sternberg*, 66 Barb. 201, MULLIN, J., says :
''It is the right of the party to inspect a memorandum
used by a witness while testifying, whether he reads its
contents, or only uses it to refresh his recollection.    The
witness has no right to use a memorandum in either way
unless made by himself ; and, if the witness cannot be
compelled to produce it, he might use documents made
for him by the party calling him, of the accuracy of
which he knows nothing.    Such a practice, if tolerated,
would lead to the greatest abuses.    Before the witness
can be required to produce a paper, however, it must
appear that he is using it as, or in aid of, his testimony.
No lawyer would claim to be entitled to an inspection of
every paper the witness might have in his custody, or
even in his hand, while giving evidence.''    Mr. Bradner,
in his work on Evidence (p. 308), says : ''A witness who
has drawn up a written narrative of a matter or transac-
tion may in many cases use it, while under examination,
as a script to refresh his memory.    In cases requiring
many details of duty, quantity, etc., it is proper to allow
a witness to consult, but not to read from, memoranda

made by him of facts within his own knoweledge, to
which he cannot speak in sufficient detail without such
aid, although the memoranda were made in preparation
for the trial—that is to say, a witness may use a memo-
randa or any book or paper to refresh his memory if he
can afterwards swear to the fact from recollection ; but,
if he cannot so swear, otherwise than as finding it in the
book, then it must be produced.'' Many authorities may
be found to the same effect, and it is unnecessary to quote
further from them. See *Bonnett* v. *Glattfeldt*, 120 Ill. 166
(11 N. E. 250); *State* v. *Bacon*, 41 Vt. 526 (98 Am. Dec.
616, and monographic note); *State* v. *Collins*, 15 S. C.
373 (40 Am. Rep. 697); *State* v. *Baldwin*, 36 Kan. 1, 15
(12 Pac. 318); *Peck* v. *Valentine*, 94 N. Y. 569 ; *State* v.
*Cheek*, 35 N. C. (13 Ired.) 114 ; 2 Taylor, Ev. § 1413.

But when the witness uses the paper or memorandum
while on the witness stand to refresh his memory, the
opposite party is entitled to see it, and to cross-examine
touching it, if he so desires. In *Chute* v. *State*, 19 Minn.
271, 278, a case wherein the writing was handed the
witness while undergoing examination, which was in-
spected for the purpose of refreshing his memory, it
was said by BERRY, J., that ''if it was important for the
prosecution that the witness should be permitted to ex-
amine, why was it not equally important for the de-
fense to ascertain by its inspection, as well as otherwise,
whether its examination was really calculated fairly to
subserve the purpose for which it was offered to the
witness?'' So, in *Duncan* v. *Seeley*, 34 Mich. 369, the
witness, having looked at a paper while on the stand,
professed that it had refreshed his memory, but refused
to produce it, and it was held error for the court to
refuse to require its production. Mr. Underhill says :
''A witness generally will be permitted to speak of those
facts only which are within his personal knowledge and

recollection. He may aid or refresh his memory, if it is
weak or at fault, by consulting on the witness stand a
writing or memorandum, whether made by himself or
another person, if, after examining it, and because of
what he has read therein, he is able to testify of his own
recollection thus renewed and revived. The memoran-
dum is not generally, nor need it ever be, competent
evidence. Hence the question of its relevancy or ma-
teriality should not be considered. Nor need it be read
as evidence to the jury, though it seems that they may
examine it to see if the recollection of the witness could
have been refreshed :'' Underhill, Cr. Ev. § 217. Mr.
Wharton says : ''The opposing party is not entitled to
inspect a paper put into the witness' hands to refresh
his memory, but which fails to have that effect. But
where the witness depends upon the writing for the re-
vival of his recollection, the opposing party is entitled
to see the paper, and to cross-examine on the same :''
Wharton, Ev. § 525. See, also, *McKivitt* v. *Cone*, 30
Iowa, 455 ; *Howard* v. *McDonough*, 77 N. Y. 592. The
very essence of the rule, comprehending both phases of
the question as we have treated it, is laid down in terse
statement in 8 Enc. Pl. & Prac. pp. 142, 143. We quote:
''Witnesses frequently refresh their memories, before
going into court, by referring to papers in their posses-
sion, which they do not take with them to trial ; and
where they rely on their recollection of the facts it is
not essential that the memoranda be produced in court.
But if the papers are in court, and the witness makes
use of them while giving his testimony, counsel for the
opposing party has a right to inspect them for the pur-
poses of cross-examination. And, as we have seen,
where the witness does not rely wholly on his memory,
but rests his testimony in part upon the certainty that

his memorandum is correct, he must produce the original paper for inspection by the counsel for the other side.''

2. Now, the evident purpose of the statute is to regulate the production of the writing or memorandum by the witness when he is consulting or using it while upon the stand and undergoing examination, and not to require its production in court when not so used. We must, therefore, look to the law as it stood prior to the statute for regulation respecting the production in court of a memorandum otherwise used to refresh the memory of the witness. Where a memorandum has been produced in court, competent for use, and is used by the witness for the purpose of refreshing his memory, the opposite party may not only cross-examine concerning it, but may read it to the jury, whether it is otherwise entitled to admission as substantive evidence of the fact about which it speaks or not. In the case at bar, the witness McLauchlan had refreshed his memory by reference to the extended shorthand notes while out of court, and before going upon the stand. How long previously it does not appear. After so refreshing his memory, he was able to testify to the facts to which the notes related from independent recollection; that is to say, all the facts were so revived in his mind that he was qualified and capacitated to testify to them from his own knowledge and recollection, independently of the notes. The case falls clearly within the first class designated by the authorities, and, the witness not having referred to or used the notes while undergoing examination, for the purpose of refreshing his memory, the defendant had no right to their production in court. It would have been otherwise if the witness, after refreshing his memory, could not have spoken from independent recollection, but could only testify that he knew the facts at the time

they were written down, that they were written correctly, that he could not recall them, but that he knew them to be true as stated in the memorandum. Such a case would fall under the second class, and the defendant would then be entitled to the privilege of having the notes in court for his inspection. Such is the doctrine of *Howard* v. *Camfield*, 1 Jur. 71, *Stanwood* v. *McLellan*, 48 Me. 275, and other cases relied upon by counsel for appellant. The case as now presented differs only from the case when it was here before and that of *State* v. *Moran*, 15 Or. 262 (14 Pac. 419), in that it now appears the statement of defendant was reduced to writing under the direction of the witness. But the rule requiring the production of the memorandum in court is not applicable to the facts in either case. The court below was not in error, therefore, in denying the defendant's motion to take the testimony of the witness McLauchlan from the jury.

3. Aside from the foregoing reasons, the motion was properly denied upon two other grounds : (1) The defendant did not request the witness, nor the court to require the witness, to produce the stenographer's notes, or the extended copy thereof, in court, for the purpose of affording him the opportunity of cross-examining touching them. He simply moved that the testimony of the witness be taken from the consideration of the jury, because it appeared he did not have the notes in court with him. It may have been, for aught that appears, if the request had been made they could have been produced, and the defendant had the benefit of them for the purpose of cross-examination ; but, not having made the request, he has waived any right he may have had to have the notes in court : *Adae* v. *Zangs*, 41 Iowa, 536 ; *Wernwag* v. *Chicago & A. Ry. Co.* 20 Mo. App. 473.

4. A further reason is (2) that the motion included evidence which was pertinent and proper to have gone to the jury in any event, and had no relation to the statement made by the defendant, and taken down by the stenographer. In such a case, where it is sought to take away competent testimony along with that which is supposed to be incompetent, it is proper to deny the motion as to the whole: *Jennings* v. *Garner*, 30 Or. 344 (48 Pac. 177).

The state introduced evidence tending to show that prior to the homicide the defendant had little or no money; that on the next day thereafter he went to Portland with two girls, with whom he and one Frank Chalifou had been keeping company; that defendant and the girls stopped at the same hotel, defendant paying the board and lodging for all; that after a few days he visited Marion County, but returned the next day, in company with Chalifou; that Chalifou and he stopped at the same hotel again where the girls were staying, and at various times during their stay in Portland they all attended places of amusement, and that defendant paid the expenses of admission. Chalifou, being called as a witness, was permitted to testify, over the objection of defendant, that they (the defendant, the two girls, and himself) went out to Exhibition Hall, or some place out there, stayed until 12 o'clock at night, stopped at another place in town and got a couple of drinks, and then went back to the hotel at 1 o'clock. It is now argued that this evidence was prejudicial to the defendant; but it cannot be so considered, as it was cumulative, merely, of what had been previously introduced in the attempt of the prosecution to trace the whereabouts of the defendant, and show his lavish and reckless expenditure of money.

5. While one of the counsel for defendant was engaged in his closing argument to the jury, he asseverated

that certain detectives whose evidence had been introduced were working to obtain a reward from the county for their services, whereupon the district attorney interposed an objection to the counsel making such a statement to the jury, as no evidence had gone in touching the reward. In passing upon the objection, the court said that some questions had been asked about a reward, but there was no testimony that the county had offered a reward; to which an exception was taken, and this is assigned as error. The fact as stated by the court was true in every sense, and it could not have prejudiced the defendant in any particular.

At the trial the defendant requested certain instructions to be given to the jury, which were not given in the form they were presented to the court, and the refusal to so submit them constitutes another assignment of error. As it respects this assignment it is sufficient to say that the instructions given by the court cover substantially those requested. They are more concise and clear, and more likely to have been understood by the jury; and hence there was no error in refusing the instructions requested.

6. . The defendant did not take the witness stand in his own behalf, and the court, in its instructions to the jury, did not explain to them that the fact of the defendant's remaining silent should not create any presumption against him. After the jury had retired to consider their verdict, defendant's counsel called the court's attention to its failure to make such explanation in langauge as follows: "I think it would be the duty of the court, in a case of this kind, to instruct the jury of its own motion that the fact of the defendant not testifying in his own behalf should not be taken as a circumstance against him." The counsel, however, did not request the court to recall the jury, and so instruct them. It is now urged

that the court erred in omitting the explanation. It was not a duty devolving upon the court upon its own motion to make the explanation to the jury, and, the defendant not having requested it, the failure to give it was not error of which the defendant can now complain : *Metz* v. *State*, 46 Neb. 547 (65 N. W. 190); *People* v. *Flynn*, 73 Cal. 511, 513 (15 Pac. 102); *Matthews* v. *People*, 6 Colo. App. 456 (41 Pac. 839); *Grubb* v. *State*, 117 Ind. 277 (20 N. E. 257, 725).

7. The jury returned their verdict on May 27, 1899, and, on June 2 following, the defendant filed a motion for a new trial, based upon two grounds, viz.: (1) Misconduct of one of the jurors ; and (2) newly-discovered evidence material to the defense. Another basis consisted of alleged errors occurring at the trial, but these have been passed upon. Upon the first ground it is shown by the affidavit of J. D. Kent that the juror J. W. Mitchell, on the day after the rendition of the verdict, when it was suggested to him that under the law all doubts should be resolved in favor of the person accused, made reply as follows : "No, sir ; every man acts upon his own judgment," that John Boyer, Henry Boyer, and others were present, and heard the conversation. It was further shown by the affidavit of Mary McIntosh and Lulu McIntosh that Mrs. C. P. Mitchell, the wife of the juror, had, on May 24, 1899, told them that she had dreamed of Magers being hung, and that her husband had participated in it ; that she had asked him the day after the dream, and after he had been summoned as a juror, whether he would do such a thing, and he had replied to her that he did not want to go as a juror if he did not have to, but, if he did, that was what he would do. Counter affidavits of John Boyer, J. W. Mitchell, the juror, and C. P. Mitchell, his wife, were filed in refutation of the statements of Kent and

the McIntoshes.  The first two deposed that the only
statement the juror made to Kent was, in effect, that,
after hearing the evidence, there was not any doubt as
to the guilt of the defendant; that his guilt was proven
beyond a reasonable doubt; and that it was not true
that he used the language, and in the sense, attributed
to him by Kent.  Mitchell further deposed that he went
into the jury box unprejudiced; that in the considera-
tion of the case he arrived at the conclusion of the de-
fendant's guilt solely from the evidence produced at the
trial, uninfluenced by anything that had theretofore been
communicated to him touching the case.  Mrs. Mitchell
denied emphatically the statements attributed to her by
the McIntosh women.  She says it was true she had a
conversation with them, in which she spoke of having
dreamed of seeing Magers hung, but that she did not
tell them that Mr. Mitchell had made any statement to
her concerning the matter, nor was it true that Mitchell
ever told her that he did not want to go as a juror, but
that, if he did, that was what he would do,—meaning
that he would hang the defendant,—and that he never
at any time had such a conversation with her.  This is,
in substance, the case presented upon the first ground
assigned.  It is claimed on the part of the state that a
motion for a new trial, based upon evidence *dehors* the
record, is not reviewable by this court.  But, however
that may be, the court exercised at least a judicial discre-
tion in passing upon the question of fact thus presented,
and it could only be for an abuse of that discretion that
its findings would be disturbed on appeal.  It is very
clear that the court below found in harmony with the
most reasonable deduction susceptible from the conflict-
ing statements of the opposing deponents, and hence the
new trial, based upon the first ground, was properly re-
fused.

8. As it regards the second ground, but little need be said. There was no showing that the supposed newly-discovered evidence was not known to the defendant prior to and during the time of the trial. Such a showing is essential, and without it a new trial should never be granted.

9. During the pendency of the motion for a new trial, it was sought to have the court direct that certain individuals be brought before it, and examined under oath touching any statements that the juror Mitchell may have made to them regarding his preconceived prejudices against the defendant, and statements made by him derogatory of his qualifications to act as a juror, for the purpose of obtaining further information and proof in support of the motion. This was refused, and some contention was made that the court erred in not granting the request. We know of no rule of law authorizing the procedure, but, in any event, the court was fully warranted in disregarding the request.

This disposes of all the qustions presented, and, there being no error ascertainable from the record, the judgment of the court below must be affirmed, and it is so ordered.                                    AFFIRMED.

<br>

Decided 10 July; rehearing denied 27 November, 1899.