### LENNON v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
June 8, 1927.

No. 7497.

1. Criminal law ⟨key⟩741(1)—Case must be submitted to jury where competent evidence is offered, which is sufficient, if believed, to sustain conviction.

Where proper and legal evidence has been offered by the prosecution, which, if believed, is sufficient in law to show that defendant participated in the commission of an offense, and to sustain a conviction, it is the duty of the court to submit the cause to the jury.

2. Criminal law ⟨key⟩622(1)—Separate trial is discretionary with court.

Granting of a separate trial rests in the sound discretion of the court.

3. Witnesses ⟨key⟩256—Only where witness refreshes memory while on stand may production and inspection of writing be demanded.

Only when a witness uses a paper to refresh his memory while on the stand is there a right to demand its production and inspection.

4. Witnesses ⟨key⟩344(2)—Misconduct not resulting in conviction of crime is not subject for cross-examination.

Acts of misconduct, not resulting in conviction of crime, are not proper subject of cross-examination to impeach a witness.

5. Criminal law ⟨key⟩423(1)—Acts of each of defendants, jointly indicted for maintaining nuisance, in promotion of the business, are admissible against all (National Prohibition Act, tit. 2, § 21 [Comp. St. § 10138½jj]).

Where defendants were jointly indicted for maintaining a nuisance, in violation of National Prohibition Act, tit. 2, § 21 (Comp. St. § 10138½jj), acts of each in promotion of the business are binding on all, and may be shown, even in absence of any charge of conspiracy.

In Error to the District Court of the United States for the District of Minnesota; John B. Sanborn, Judge.

Criminal prosecution by the United States against A. L. Lennon. Judgment of conviction, and defendant brings error. Affirmed.

George R. Smith, of Minneapolis, Minn. (Edward J. Callahan and John F. Dahl, both of Minneapolis, Minn., William J. Hughes, Jr., of Washington, D. C., and Joseph A. Kozlak and William B. Movery, both of Minneapolis, Minn., on the brief), for plaintiff in error.

James A. Wharton, Asst. U. S. Atty., of St. Paul, Minn. (Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., on the brief), for the United States.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and DAVIS, District Judge.

DAVIS, District Judge. Ambrose L. Lennon was convicted in the district court of Minnesota of maintaining a nuisance, in violation of section 21, tit. 2, of the National Prohibition Act (Comp. St. § 10138½jj). He brings the case here on writ of error. (The parties will be designated as in the trial court.)

The local lodge of the Fraternal Order of Eagles, in the early part of 1925, completed the construction of a building containing three stories and a basement at 117 Fourth Street Southeast, in the city of Minneapolis. The third floor was a large auditorium, the second floor was arranged as offices for professional men, the first floor was designated as the quarters of the officers of the lodge, and the basement contained a general club room, a kitchen, and a bar.

The lodge had several thousand members, and to gain admission to the club room it was required that membership cards be exhibited.

Three prohibition agents sought and were admitted to membership in the order. Sheldon P. Medbury became a member on February 20, 1925; Isaac L. McCoun, on March 16, 1925; Halsey L. Hearshman, on April 9, 1925. These agents collected evidence which resulted in a search warrant being issued, and on Sunday, May 3, 1925, a raid was made of the premises of the lodge. The evidence was submitted to the constituted authorities and resulted in the indictment of the defendant, jointly with 16 other persons. Eight of the indictees, including the defendant here, were officers of the lodge, and nine were bartenders. Seven of the defendants entered pleas of guilty and were sentenced to serve eight months in jail. One of the parties was not in court, and nine of the defendants entered pleas of not guilty. The indictment was dismissed as to three of the defendants during, and as to one of the defendants at the close of, the government's case. The cause was submitted to the jury as to the remaining five defendants, including Ambrose L. Lennon. The verdict was guilty, and the sentence was one year in jail as to each of these defendants.

I. The evidence in this case clearly shows that a nuisance, as that term is understood, was maintained on the premises with which we are concerned. Counsel for defendant in his brief virtually conceded that to be true, and, with commendable frankness, in his oral argument stated that the existence of the nuisance was an admitted fact. But it is asserted that the evidence does not show that defendant was guilty of knowingly participating in the maintenance of the nuisance. The error most vigorously urged is that the motion for a directed verdict should have been sustained on the ground of the insufficiency of the evidence.

The defendant was one of three trustees of the lodge. The trustees had general charge of the building and other property of the local organization. It was the duty of the said officers to exercise supervision over property and handle the renting and leasing of such portion of the building as were set aside for that purpose. The proceeds of the bar were placed in a special fund, and after deducting the expense of maintaining that service the balance was turned over to the lodge. There was paid to the lodge $5,000 from this fund during the month of April, 1925. The evidence does not show that this money was delivered to the trustees, but that checks in the above amount were deposited in the East Hennepin State Bank to the credit of the building fund of the lodge. The operating expense of the bar for the same month was approximately $1,900.

The evidence was to the effect that the members of the lodge visited the premises in considerable numbers on Sundays and holidays. The witness Medbury related an occurrence at the weekly meeting of the lodge on Sunday, March 2, 1925, and his testimony, in part, was to this effect:

"Q. You were present during the entire meeting? A. Yes, sir.

"Q. Did you hear all of the proceedings of that meeting? A. I did.

"Q. Was anything said there with reference to the conduct of the business of the buffet or barroom? A. There was.

"Q. By whom was it said? A. Mr. Lennon.

"Q. You mean the defendant, present here? A. Yes, sir.

"Q. What did he say? A. Made a recommendation to the meeting that the front doors of the building be kept open from 12 noon to 6 at night on Sundays and holidays, so that the men going and coming in the alley to the back room—the back door—would not cause too much attention drawn to that door, saying further that would cause no further publicity, and something would happen we didn't all of us want. That was passed on without a dissenting vote."

The cross-examination of the witness on this subject reveals the following question and answer (reading):

"(5) That the main entrance be kept open on Sundays and holidays from 12 to 6 p. m., and that arrangements be made so that some one will be in attendance to take care of visitors and general supervision. Was that not the motion made at that time?

"The Witness: It was a section of it; yes, sir."

The witness Medbury further testified that he had seen the defendant in the barroom while liquor was being dispensed. His evidence on that matter was as follows:

"Q. During your numerous visits to this barroom, did you ever see Mr. Lennon there? A. I have.

"Q. Can you refer to your diary, and refresh your memory, and tell us when it was? A. It was on March 2d. After the meeting he came down with a national organizer that was there, building up the membership all over the country.

"Q. Was that the evening on which the resolution that you have referred to and testified to was passed? A. Yes, sir.

"Q. And on that evening you saw Mr. Lennon down there in the barroom? A. Yes, sir.

"Q. What, if anything, did you see take place there, with reference to Mr. Lennon? A. They were standing there, talking at the bar. That is all I can testify to.

"Q. At the time they were standing there talking at the bar, were many people being sold over the bar? A. Yes, sir.

"Q. And was that the occasion when there was quite a large crowd there? A. There was a large crowd of men in the room.

"Q. And was there much, or little, selling of liquor taking place at the time Mr. Lennon was in the room? A. Much.

"Q. Do you recall how many bartenders were on duty there? A. Two.

"Q. Did you see or hear Mr. Lennon make any remonstrance as to what was occurring there? A. No, sir.

"Q. Did you, on any other occasion, see Mr. Lennon in the barroom? A. I don't have reference to the dates these other times he was there.

"Q. But did you see him on other occasions? A. Yes, sir.

"Q. Did you ever see him consume any drinks? A. No, sir.

"Q. Did you ever see him buy any drinks there? A. No, sir."

Prohibition Agent McCoun was a witness, and testified to having seen the defendant in the barroom. We quote from the transcript of the evidence:

"Q. Did you ever see Mr. Lennon in there? A. Yes, sir.

"Q. When, if you recall, did you see Mr. Lennon? A. On different occasions. Oh, I saw him different occasions there. I haven't got them in my notes, but I remember seeing the gentleman down there, and he was pointed out to me as Mr. Lennon.

"Q. Are you able to state whether you saw him in there on more than one occasion? A. Yes, sir.

"Q. How many occasions? A. Oh, three or four different times.

"Q. Three or four different times? A. Yes, sir.

"Q. Do you know whether or not you saw him drinking anything in there? A. I never saw him drink; no, sir.

"Q. At the time you saw him in there, were other people in there? A. Yes, sir.

"Q. Were the bartenders on duty? A. Yes, sir.

"Q. And did you observe whether or not there was liquor being passed or sold over the bar? A. Yes, sir; there was."

The evidence and circumstances relating to defendant's knowledge of and participation in the maintenance of the nuisance may be summarized in this way:

(1) He was one of three trustees of the lodge who had the general supervision of lodge property, including a large new building, erected at a cost of about $300,000. The barroom was being operated in a conspicuous manner in the building and the building fund of the lodge was deriving a very substantial revenue from that source.

(2) The defendant at the lodge meeting on March 2, 1925, made a motion that during the afternoons of Sundays and holidays the front door of the building be kept open. The records of the lodge showed that the motion was made, but there was a conflict in the testimony as to what defendant said in addition to reading the resolution. The witnesses agreed that he spoke in support of the written motion. If the statement of the witness for the government was true, defendant was aware of the sale of liquor on the premises. Only one witness for the defense testified on this subject, and if his statement was believed the defendant's object in making the motion was to give the public an opportunity to inspect the building.

(3) The defendant was shown to have been present in the barroom on numerous occasions when liquor was being sold and consumed, and made no remonstrance.

[1] The testimony of the witnesses for the prosecution, if found worthy of belief, indicated that the defendant not only knew the character of the business that was being conducted in the building, but that he actually aided and abetted the maintenance of the nuisance. In addition to the direct testimony, the evidence reveals circumstances from which the guilt of the defendant might well be inferred. The credibility of the witnesses, the weight of the evidence, and the inferences that are to be drawn from the circumstances shown to exist in the case, are essentially considerations for the jury. Where proper and legal evidence has been offered on the part of the prosecution, which, if believed, is sufficient in law to show that the defendant participated in the commission of an offense, and to sustain a conviction, it is the duty of the court to submit the cause to the triers of the fact. This seems to have been such a case, and the motion for a directed verdict was properly overruled.

[2] II. It is claimed that the defendant should have been granted a separate trial. The court was urged to grant a severance for these reasons: (1) "That a great deal of

prejudicial evidence may be introduced, and probably will be introduced, which may be admissible as to other of the defendants, but in no wise admissible as to this defendant;" (2) "that the defenses of other defendants to the charge in said indictment are antagonistic to the defense which your affiant has." The court overruled the motion, and the propriety of its action in that respect is to be determined as of the time and stage of the case when the ruling was made. There were nine defendants, and they were about to go to trial upon an indictment containing but a single count. The rule has frequently, recently, and very generally, been stated to be that the granting of a separate trial rests in the sound discretion of the court. O'Brien v. U. S. (C. C. A.) 299 F. 568; Sullivan v. U. S. (C. C. A.) 7 F.(2d) 355; Buchanan v. U. S. (C. C. A.) 15 F.(2d) 496.

That the court properly ruled on this motion is indicated by the subsequent developments in the case. The cause was dismissed during the trial as to four of the indictees. The evidence did not bring forth, in any essential respect, testimony admissible as to other of the parties, and inadmissible as to defendant. The record does not indicate that there were inconsistent defenses made by the parties on trial. But one of the five defendants was called as a witness. Mr. Lennon availed himself of the privilege of silence. It is not now claimed that by reason of the joint trial defendant was prevented from offering testimony relevant to his case, or from making his defense. In fact, defendant has abandoned the grounds urged for a separate trial below, and now asserts a different reason. It is here stated that the evidence was strong as to certain defendants, but was weak as to this defendant, and that the jury in convicting some of the parties, treated them as a group, and returned a verdict of guilty as to all. This is a surmise, without basis in the record. The trial court was particularly cautious to charge the jury to consider the evidence separately and distinctly as it applied to each defendant. In other words, the developments of the case subsequent to the ruling of the court on the motion for a severance, clearly indicate that the defendant was not prejudiced thereby, and strengthen the conviction that there was no abuse of discretion.

[3] III. It is urged that the court should have required the production of certain documents. When the witness Medbury was on the stand, he was asked on cross-examination whether he had read his report before testifying. This is what the record reveals:

"Q. Did you, before you went on the stand, read over your reports to refresh your recollection with reference to these matters?

"Mr. Wharton: Objected to; too remote, no time mentioned, indefinite.

"Q. Shortly before going on the stand?

"The Court: He may answer.

"A. I spent a lot of time studying the reports.

"Q. You spent a lot of time studying the reports, preparatory to going on the stand here as a witness? A. Yes, sir.

"Q. And that was done shortly before going on as a witness, or was it way last summer? A. Last summer also.

"Q. When did you last look at your reports, prior to going on the stand here to testify? A. Last night.

"Q. And you studied the reports over carefully, did you? A. Tried to; yes.

"Q. Now, I ask the privilege of seeing the memoranda that witness admits he used for the purpose of refreshing his recollection from, though not in court.

"Mr. Wharton: Same objection as before.

"The Court: As I recollect it, he testified to that matter from his independent recollection, Mr. Dahl, and I do not believe the court has any right to require the witness to show his reports."

It will be observed that the witness did not use his reports while on the witness stand or in court. Reliance is placed upon the case of Morris v. U. S. (C. C. A.) 149 F. 123, 9 Ann. Cas. 558. In that case a witness while on the stand used, for the purpose of refreshing his memory, a paper which purported to be an affidavit made by him and sworn to before a justice of the peace. The defendant was refused permission to inspect and examine the paper. This was held to be error, because it is a well-settled rule that the opposing party or counsel has the right, upon proper demand, to inspect and use, for purposes of cross-examination, any paper or memorandum which is used by a witness, while on the stand, for the purpose of refreshing his present recollection. This right is accorded, in order that he may ascertain whether the paper or memorandum used has any legitimate tendency to bring the fact in controversy to the mind of the witness, and in order that he may be in a position to cross-examine as to the testimony given and thereby to test the candor and integrity of the witness. People v. Schepps, 217 Mich. 406, 186 N. W. 508, 21 A. L. R. 658; State v. Bacon, 41 Vt. 526, 98 Am. Dec. 616; Rutledge v. State, 94 Tex. Cr. R. 231, 250 S. W. 698.

But in this case the situation was very different. The paper was not used while the witness was on the stand; it was not in court, but was read by the witness in his room the day before the trial. Witnesses frequently refresh their memories before going into court, by referring to papers in their possession which are not taken into court; and where they rely on their recollection of the facts, as this witness did, it is not necessary that the writing be produced. It is only where the witness uses the paper to refresh his memory while on the stand that there exists a right to compel the production of the writing for inspection. Wabash, etc., Canal v. Bledsoe, 5 Ind. 133; Davenport v. McKee, 94 N. C. 330; State v. Collins, 15 S. C. 379, 40 Am. Rep. 697; Hamilton v. Rice, 15 Tex. 382; Tibbetts v. Sternberg, 66 Barb. (N. Y.) 201; State v. Magers, 36 Or. 38, 58 P. 892; 28 R. C. L. 596; 22 L. R. A. (N. S.) 706, 40 Cyc. 2463. The defendant has no just ground of complaint of the ruling of the court on this motion.

[4] IV. Another assignment of error is based upon the ruling of the court in excluding certain testimony. When one of the witnesses for the government was on the stand, he was asked in cross-examination whether, at a certain time, he registered at a hotel with a woman; whether, on another occasion, he had liquor in his possession and attempted to sell the same; and whether, at another time, he was intoxicated and disorderly. To this course of cross-examination the court sustained the objections of counsel for the government. The purpose of the defendant was, of course, to impeach the witness and cast a doubt upon his credibility. Acts of misconduct, not resulting in conviction of a crime, are not the proper subject of cross-examination to impeach a witness. Terzo v. U. S. (C. C. A.) 9 F.(2d) 357; Conner v. U. S. (C. C. A.) 7 F.(2d) 313; Glover v. U. S. (C. C. A.) 147 F. 426, 8 Ann. Cas. 1184. This court holds even a conviction of a misdemeanor may not be used to discredit a witness, unless the offense amounts to an infamous crime. Haussener v. U. S. (C. C. A.) 4 F.(2d) 884. There is no substance in this assignment of error.

[5] V. Lastly, complaint is made of the action of the court in admitting certain exhibits in evidence. The government introduced the canceled checks which showed the disposition that was made of the money collected at the bar. Some of these checks were given to employees, and some to persons who furnished supplies to the drinking establishment; other of the checks were deposited to the credit of the building fund of the lodge. They indicated the extent of the business that was being operated. These checks were executed by the secretary of the lodge, who was one of the five defendants on trial. The part played by each of the defendants was a proper consideration in determining whether the several defendants were jointly maintaining a nuisance. If they were jointly engaged in the commission of an offense, the acts of each of the parties in the promotion of the undertaking was binding upon all the other defendants. The checks drawn by one of the parties to the joint charge in connection with the transactions under investigation was properly considered in the case. This is true, even in the absence of any charge of conspiracy. St. Clair v. U. S., 154 U. S. 134, 14 S. Ct. 1002, 38 L. Ed. 936; Gould v. U. S. (C. C. A.) 209 F. 730; Blanton v. U. S. (C. C. A.) 213 F. 320, Ann. Cas. 1914D, 1238; Chambers v. U. S. (C. C. A.) 237 F. 513; Sprinkle v. U. S. (C. C. A.) 141 F. 811.

There appears to be no substantial error in the record, and therefore the judgment is affirmed.